**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| BAUDAX BIO, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. _____ |
| | ) |
| AXSOME THERAPEUTICS, INC., | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Baudax Bio, Inc. ("Baudax" or "Plaintiff"), as and for its Complaint against

Axsome Therapeutics, Inc. ("Axsome" or "Defendant"), hereby alleges as follows:

## THE PARTIES

1. Plaintiff Baudax is a corporation organized and existing under the laws of the

Commonwealth of Pennsylvania with a principal place of business at 490 Lapp Road, Malvern,

Pennsylvania 19355.

2. Defendant Axsome is a Delaware corporation with a principal place of business at

22 Cortlandt Street, 16th Floor, New York, New York 10007. Upon information and belief,

Defendant Axsome, itself or through its affiliates and agents, develops, manufactures, markets,

sells, and/or imports pharmaceutical products throughout the United States, including in this

judicial district.

## NATURE OF THE ACTION

3. This is a civil action for patent infringement arising under the Patent Laws of the

United States and the Food and Drug Laws of the United States pursuant to Titles 35 and 21 of

the United States Code.

4.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

**JURISDICTION AND VENUE**

5.      Upon information and belief, this Court has personal jurisdiction over Axsome.

6.      Axsome is incorporated in Delaware.  Upon information and belief, Axsome also regularly does and/or solicits business in Delaware.  Axsome has purposefully availed itself of the privilege of conducting business activities in Delaware, including by being incorporated in Delaware, such that it should reasonably anticipate being subject to jurisdiction in this Court and in Delaware.

7.      Upon information and belief, Axsome is in the business of manufacturing and/or selling pharmaceutical products that are distributed throughout the United States, including in this judicial district.

8.      Among other things, upon information and belief, Axsome, either directly or through its affiliated entities, affiliates, and agents, regularly develops, formulates, manufactures, obtains regulatory approval for, markets, sells, and/or distributes drug and pharmaceutical products throughout the United States, including in Delaware, where it is incorporated.

9.      Upon information and belief, Axsome, through its own actions and/or through the actions of its affiliates, has engaged in the research and development, and the preparation and filing of New Drug Application ("NDA") No. 215431 ("NDA No. 215431") under 21 U.S.C. § 355(b)(2), continues to engage in seeking Food and Drug Administration ("FDA") approval of NDA No. 215431, intends to engage in the commercial manufacture, marketing, offer for sale, sale, and/or importation of Axsome's proposed Drug Product (defined below) throughout the

-2-

United States, including in Delaware, where it is incorporated, and stands to benefit from the approval of NDA No. 215431.

10.     This Court also has personal jurisdiction over Axsome at least because: (a) Axsome is incorporated in Delaware; (b) Axsome has filed NDA No. 215431 seeking approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of the proposed Drug Product in the United States, including in the State of Delaware; (c) Axsome, through its own actions or through the actions of its affiliates, will market, distribute, offer to sell, and/or sell the proposed Drug Product in the United States, including in Delaware and to residents of this judicial district, upon approval of NDA No. 215431, and will derive substantial revenues from the use and consumption of the proposed Drug Product in Delaware; and (d) Axsome has purposefully availed itself of the privilege of doing business in Delaware by incorporating itself in Delaware and by placing goods into the stream of commerce for distribution throughout the United States and within Delaware, and/or by selling, directly or through its agents, pharmaceutical products in Delaware.  Upon information and belief, if NDA No. 215431 is approved, the proposed Drug Product would be marketed, distributed, offered for sale, sold, prescribed by physicians, dispensed by pharmacies, and/or used by patients in Delaware, all of which would have a substantial effect on Delaware.

11.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1400(b) because Axsome is incorporated in Delaware and, as a result, is resident in this judicial district.

120649365

## FACTUAL BACKGROUND

## The Patents-in-Suit and Baudax's Branded Product

**A.      The '727 Patent**

12.      Baudax owns by assignment U.S. Patent No. 8,512,727 (the "'727 Patent").  The '727 Patent was issued on August 20, 2013.  The '727 Patent is valid and legally enforceable.  A true and correct copy of the '727 Patent is attached hereto as **Exhibit A**.  The '727 Patent expires on December 25, 2022.

13.      Claim 1 of the '727 Patent claims:

> 1.      An intravenous injection pharmaceutical dosage form comprising:
>
> (a) a liquid dispersion medium selected from the group consisting of water, an aqueous salt solution, safflower oil, ethanol, t-butanol, hexane and glycol;
>
> (b) particles of meloxicam or a salt thereof having an effective average particle size of less than 200 nm; and
>
> (c) polyvinylpyrrolidone and sodium deoxycholate as surface stabilizers adsorbed on the surface of the meloxicam particles,
>
> wherein:
> (i) the surface stabilizer are essentially free of intermolecular cross-linkages;
>
> (ii) meloxicam is present in an amount of from about 99.5% to about 0.001%, by weight, based on the total combined weight of the meloxicam and the surface stabilizers; and
>
> (iii) the surface stabilizers are present in an amount of from about 0.01% to about 99.5%, by weight, based on the total combined weight of the meloxicam and the surface stabilizers.

**Exhibit A**, 29:31-51.

120649365

14.     Claim 5 of the '727 Patent claims:

> 5.     A method of making an intravenous injection pharmaceutical dosage form comprising contacting meloxicam particles with polyvinylpyrrolidone and sodium deoxycholate as surface stabilizers in the presence of a liquid dispersion medium selected from the group consisting of water, an aqueous salt solution, safflower oil, ethanol, t-butanol, hexane, and glycol for a time and under conditions sufficient to provide the intravenous injection pharmaceutical dosage form comprising meloxicam particles having an effective average particle size of less than 200 nm, wherein:
>
> (i) the surface stabilizers are essentially free of intermolecular cross-linkages;
>
> (ii) meloxicam is present in an amount of from about 99.5% to about 0.001% by weight, based on the total combined weight of the meloxicam and the surface stabilizers; and
>
> (iii) the surface stabilizers are present in an amount of from about 0.01% to about 99.5%, by weight, based on the total combined weight of the meloxicam and the surface stabilizers.

**Exhibit A**, 29:63-30:15.

**B.     The '067 Patent**

15.     Baudax owns by assignment U.S. Patent No. 10,471,067 (the "'067 Patent").  The '067 Patent was issued on November 12, 2019.  The '067 Patent is valid and legally enforceable. A true and correct copy of the '067 Patent is attached hereto as **Exhibit B**.  The '067 Patent expires on February 24, 2024.

16.     Claim 1 of the '067 Patent claims:

> 1.     An injectable pharmaceutical dosage form comprising:
> 30 mg of meloxicam, or a salt thereof, wherein the meloxicam is in the form of particles having an effective average particle size of less than or about 2000 nm;
> polyvinylpyrrolidone;
> sodium deoxycholate;

-5-

sucrose; and

water;

wherein the dosage form does not comprise a combination
of meloxicam and a vasomodulator.

**Exhibit B**, 28:18-27.

      **C.**    **Baudax's Branded Product**

    17.    Baudax holds New Drug Application No. 210583 ("Baudax's NDA") for the

intravenous solution Anjeso® meloxicam 30mg/ml, which is prescribed and sold in the United

States under the brand name Anjeso®. Baudax's NDA was approved on February 20, 2020.

    18.    Anjeso® is indicated for the management of moderate to severe pain, alone or in

combination with other non-NSAID analgesics.

    19.    The '727 Patent and the '067 Patent, among other patents, are listed in the FDA's

*Approved Drug Products with Therapeutic Equivalents Evaluations*, more commonly known as

the "Orange Book," for Anjeso®.

        **Axsome's 21 U.S.C. § 355(b)(2) NDA**

    20.    Upon information and belief, as set forth in the Notice Letter (defined below),

Axsome submitted to the FDA NDA No. 215431 ("Axsome's NDA"), to seek approval to

engage in the commercial manufacture, use, or sale of drug product in the form of a solid tablet

for oral administration containing 14.5 mg rizatriptan benzoate and 20 mg meloxicam (the

proposed "Drug Product").

    21.    By letter dated September 24, 2021 (delivered to Baudax' office on September 27,

2021, but not actually received until October 4, 2021 due to a COVID office closure), and

pursuant to 21 U.S.C. §§ 355(b)(3) and 21 C.F.R. § 314.52, Axsome notified Baudax that

Axsome had submitted Axsome's NDA to the FDA, seeking approval to engage in the

commercial manufacture, use, or sale of the proposed Drug Product prior to the expiration of the

'727 Patent, the '067 Patent, and certain other patents listed in the Orange Book for Anjeso® (the "Notice Letter").

22.     Pursuant to 35 U.S.C. § 271(e)(2)(A), Axsome's submission of Axsome's NDA with a Paragraph IV Certification (defined below) is an act of infringement.

23.     Baudax was delayed in receiving the Notice Letter until October 4, 2021 due to a COVID shutdown, which prevented its timely receipt of the Notice Letter.

24.     In the Notice Letter, Axsome notified Baudax that, as part of Axsome's NDA, Axsome had included a certification of the type described in 21 U.S.C. § 355(b)(2)(A), Paragraph IV ("Paragraph IV Certification") with respect to, *inter alia*, the '727 Patent and the '067 Patent.

25.     With the Notice Letter, Baudax also received a Detailed Statement of the Factual and Legal Bases of Axsome Therapeutics, Inc.'s Opinion that Each Claim of U.S. Patent Nos. 8,512,727; 9,974,746; 10,463,673; and 10,471,067 is Invalid, Unenforceable, and/or Not Infringed (the "Detailed Statement"), setting forth the basis for Axsome's Paragraph IV Certification.

26.     In that Detailed Statement, Axsome sets forth no grounds for invalidity or unenforceability of any patent listed in the Orange Book for Anjeso®.

27.     In the Detailed Statement, regarding the '727 Patent and the '067 Patent and certain other patents listed in the Orange Book for Anjeso®, the only basis asserted by Axsome for non-infringement is the assertion that its proposed Drug Product is a tableted formulation designed for oral administration and not in a form for intravenous injection formulation.

28.     On or about October 4, 2021, Baudax also received from Axsome an Offer of Confidential Access (the "OCA") to portions of Axsome's NDA.

-7-

29.     In view of the Notice Letter and Detailed Statement, Axsome had knowledge of the '727 Patent and the '067 Patent at least since the date on which Axsome's NDA was submitted to the FDA.

30.     In order to trigger the thirty-month stay provided for in the statute, 21 U.S.C. § 355(c)(3)(C) affords Baudax only forty-five (45) days from receipt of the Notice Letter to determine whether to file an infringement lawsuit under 35 U.S.C.§ 271(e)(2).

31.     Pursuant to the Notice Letter, Axsome offered confidential access to Axsome's NDA for the sole purpose of permitting Baudax to determine whether to file an infringement action under 35 U.S.C. § 271(e)(2).

32.     The OCA permitted attorneys from one outside law firm access to certain information from Axsome's NDA, which information was selected by Axsome for disclosure to Baudax.

33.     In the OCA, Axsome offered no input to Baudax on the NDA information provided by Axsome.

34.     Pursuant to the OCA, Baudax's outside counsel were prohibited from sharing the selected portions of Axsome's NDA with any other person or entity, including without limitation, any expert or other scientific consultant, without prior written approval from Axsome.

35.     Baudax's outside counsel executed the OCA on October 21, 2021.

36.     On October 25, 2021, Axsome provided documents to Baudax's outside counsel under the OCA.

37.     Under the OCA, Axsome provided only 5 pages of Axsome's NDA, which contained numerous redactions, to Baudax's outside counsel, a document that is likely thousands of pages in length.

-8-

38.     Given the short time-frame provided for in 21 U.S.C. § 355(c)(3)(C), although Baudax's outside counsel was given access to a very limited portion of Axsome's NDA, Baudax's outside counsel did not have sufficient time to seek Axsome's approval of an expert, and have such an expert perform any analysis of any limited portions of Axsome's NDA disclosed to Baudax's outside counsel.

39.     Furthermore, the selected portion of Axsome's NDA provided to Baudax's outside counsel did not contain critical information relevant and necessary for Baudax's outside counsel to fully assess the proposed Drug Product's infringement of, without limitation, the '727 Patent and the '067 Patent.

40.     Baudax further has not been provided with any samples of the proposed Drug Product or any of its intermediary compositions.

41.     The OCA further required Baudax's outside counsel to destroy or return to Axsome's outside litigation counsel the provided very limited excerpts from Axsome's NDA within thirty-five (35) days of receipt. Baudax's outside counsel was also prohibited from having a copy of the very limited excerpts from Axsome's NDA when this Complaint was filed.

42.     Pursuant to the terms of the OCA, Baudax's outside counsel was also prohibited from publicly disclosing any information in the produced portions of Axsome's NDA. This prohibition therefore prohibited Baudax from including or referencing any information in the very limited excerpts from Axsome's NDA that were provided to Baudax's outside counsel under the OCA in this Complaint.

43.     This action is being commenced before the expiration of forty-five (45) days from the date Baudax received the Notice Letter under 21 U.S.C. § 355(c)(3)(C).

-9-

**The Proposed Drug Product**

44.     Pursuant to the Detailed Statement, Axsome alleges that it does not infringe, *inter alia*, the '727 Patent and the '067 Patent, because its proposed Drug Product is in tableted form for oral administration.  Axsome provided no other basis for non-infringement of the '727 Patent or the '067 Patent in the Detailed Statement and the Detailed Statement sets forth no specific grounds for any asserted invalidity of the '727 Patent or the '067 Patent.

45.     As stated in the Notice Letter, the proposed Drug Product "contains 20 mg of meloxicam and 14.5 mg of rizatriptan benzoate (equivalent to 10 mg rizatriptan) as the active ingredients."

46.     The Notice Letter, the Detailed Statement, and the minimal portions of Axsome's NDA provided to Baudax's outside counsel under the OCA only offered very limited information on the proposed Drug Product.

47.     Upon information and belief, upon FDA approval of Axsome's NDA, Axsome intends to market the proposed Drug Product throughout the United States, including in Delaware.

**Based On Public Patent Filings It Is Believed That The Proposed Drug Product Is Manufactured Via A Liquid Intermediate That Would Meet The Limitations Of At Least One Claim In The '727 Patent And The '067 Patent**

48.     Based solely on the Notice Letter and on publicly-available information, upon information and belief, the proposed Drug Product is in tableted form for oral administration that appears to be manufactured in the manner described in at least U.S. Patent No. 10,583,088 to Axsome (the "'088 Patent"). A true and correct copy of the '088 Patent is attached hereto as **Exhibit C**.

49.     Based solely on the Notice Letter and on publicly-available information, upon information and belief, the '088 Patent describes a monolayer tablet that appears to be similar in terms of active ingredients, and the amounts of said components, to the proposed Drug Product, and the '088 Patent states in Example 4 that:

> A monolayer tablet containing 1) the inclusion complex of SBEβCD with meloxicam; 2) rizatriptan; and 3) sodium bicarbonate was prepared (SBEβCD-Meloxicam/rizatriptan/Bicarbonate). The monolayer tablet contained 20 mg of meloxicam, 10 mg of rizatriptan, and 500 mg of sodium bicarbonate.

**Exhibit C,** 36:29-34.

50.     Based solely on the Notice Letter and on publicly-available information, upon information and belief, Example 2 of the '088 Patent states that a liquid intermediate product (the "soluble meloxicam/SBEβCD inclusion complex") is manufactured prior to being dried and tableted into a monolayer tablet:

> The inclusion complexes were formed by mixing meloxicam and cyclodextrin in an aqueous pH-adjusted solution. The pH of the solution was adjusted using buffering agents. The resulting soluble meloxicam/cyclodextrin inclusion complexes were then spray dried. This spray-dried dispersion was used in the manufacture of the tablets containing cyclodextrin.

**Exhibit C,** 34:61-67.

**A.     The '727 Patent**

51.     Based solely on the Notice Letter and on publicly-available information, upon information and belief, the '088 Patent references in general detail that Axsome's product goes through an intermediary step to form a soluble meloxicam/SBEβCD inclusion complex, which Baudax has a good faith belief would appear to meet the limitations of claims 1 and 5 of the '727

-11-

Patent, especially since Axsome's sole basis in the Notice Letter to assert non-infringement is that its proposed Drug Product is in tablet form for oral administration.

52.     Based solely on the Notice Letter and on publicly-available information, upon information and belief, the manufacturing process described in the '088 Patent for the formation of soluble meloxicam/SBEβCD inclusion complexes would result in a liquid intermediate product that could be an injectable pharmaceutical dosage form that meets the limitations of claims 1 and 5 of the '727 Patent, to the extent those claims (including the preambles thereof), are construed to be limiting to such a dosage form, especially since Axsome's sole basis in the Notice Letter to assert non-infringement is that its proposed Drug Product is in tablet form for oral administration.

53.     Based solely on the Notice Letter and on publicly-available information, upon information and belief, the '088 Patent also describes that drug-cyclodextrin inclusion complexes such as the soluble meloxicam/SBEβCD inclusion complex described in the '088 Patent can be used as parenteral formulations (e.g. an injectable) and states:

> A drug-cyclodextrin inclusion complex may also be dissolved in water or another solvent to form a parenteral formulation.

**Exhibit C,** 8:53-55.

54.     Based solely on the Notice Letter and on publicly-available information, upon information and belief, Example 2 of the '088 Patent states that the drug-cyclodextrin inclusion complexes are formed with an aqueous pH-adjusted solution, and could be an aqueous salt solution that meets the relevant limitations of at least claims 1 and 5 of the '727 Patent, especially since Axsome's sole basis in the Notice Letter to assert non-infringement is that its proposed Drug Product is in tablet form for oral administration.  *See* Exhibit C, 34:61-67.

-12-

55.     Based solely on the Notice Letter and on publicly-available information, upon information and belief, the '088 Patent states that the dosage form may contain the excipient polyvinylpyrrolidone that meets the relevant limitations of at least claims 1 and 5 of the '727 Patent, especially since Axsome's sole basis in the Notice letter to assert non-infringement is that its proposed Drug Product is in tablet form for oral administration:

> In addition to meloxicam, a cyclodextrin, a triptan, and a bicarbonate, some dosage forms may contain excipients such as microcrystalline cellulose (e.g. about 1-20%), starch (e.g. about 1-10%), fumed silica (e.g. 0.1-10%), **polyvinylpyrrolidone** (e.g. about 1-10%), and/or magnesium stearate (e.g. about 0.1-10%).

**Exhibit C,** 24:48-53 (emphasis added).

## B.     The '067 Patent

56.     Based solely on the Notice Letter and on publicly-available information, upon information and belief, it is believed that at least portions of the soluble meloxicam/SBEβCD inclusion complexes can and likely do comprise 30 mg of meloxicam even though a tableted dosage form made from the soluble meloxicam/SBEβCD inclusion complexes might only contain 20mg of meloxicam.  Therefore, Baudax has a good faith basis to believe that the relevant limitations of claim 1 of the '067 Patent are met, especially since Axsome's sole basis in the Notice Letter to assert non-infringement is that its proposed Drug Product is in tablet form for oral administration.

57.     Based solely on the Notice Letter and on publicly-available information, upon information and belief, the '088 Patent references in general detail that Axsome's proposed Drug Product goes through an intermediary step to form a soluble meloxicam/SBEβCD inclusion complex which would appear to meet the relevant limitations of claim 1 of the '067 Patent,

120649365

especially since Axsome's sole basis in the Notice Letter to assert non-infringement is that its proposed Drug Product is in tablet form for oral administration.

58.     Based solely on the Notice Letter and on publicly-available information, upon information and belief, the manufacturing process described in the '088 Patent for the formation of soluble meloxicam/SBEβCD inclusion complexes would result in an intermediate product that could be an injectable pharmaceutical dosage form, to the extent that the claims of the '067 Patent (including the preambles thereof), are construed to be limiting to such a dosage form.

59.     Based solely on the Notice Letter and on publicly-available information, upon information and belief, the '088 Patent also describes that drug-cyclodextrin inclusion complexes, such as the soluble meloxicam/SBEβCD inclusion complex described in the '088 Patent, which can be used as parenteral formulations (e.g. an injectable) and states:

> A drug-cyclodextrin inclusion complex may also be dissolved in water or another solvent to form a parenteral formulation.

**Exhibit C,** 8:53-55.

60.     Based solely on the Notice Letter and on publicly-available information, upon information and belief, the '088 Patent states that the dosage form may contain the excipient polyvinylpyrrolidone, which meets the relevant limitations of claim 1 of the '067 Patent, especially since Axsome's sole basis in the Notice Letter to assert non-infringement is that its proposed Drug Product is in tablet form for oral administration:

> In addition to meloxicam, a cyclodextrin, a triptan, and a bicarbonate, some dosage forms may contain excipients such as microcrystalline cellulose (e.g. about 1-20%), starch (e.g. about 1-10%), fumed silica (e.g. 0.1-10%), **polyvinylpyrrolidone** (e.g. about 1-10%), and/or magnesium stearate (e.g. about 0.1-10%).

**Exhibit C,** 24:48-53 (emphasis added).

-14-

61.     Based solely on the Notice Letter and on publicly-available information, upon information and belief, the soluble meloxicam/SBEβCD inclusion complexes does not comprise a combination of meloxicam and a vasomodulator, which meets the relevant limitations of at least claim 1 of the '067 Patent, especially since Axsome's sole basis in the Notice Letter to assert non-infringement is that its proposed Drug Product is in tablet form for oral administration.

62.     Based solely on the Notice Letter and on publicly-available information, upon information and belief, the manufacturing process for the proposed Drug Product goes through a soluble liquid intermediate that meets the relevant limitations of at least claims 1 and 5 of the '727 Patent and claim 1 of the '067 Patent.

**Need for Complete Data and Testing Regarding the Proposed Drug Product**

63.     The only basis for non-infringement asserted by Axsome is that the proposed Drug Product is in tablet form for oral administration.

64.     As set forth above, even assuming that the claims of the '727 Patent and the '067 Patent are construed to be limited to injectable drug formulations, Axsome has not asserted a valid basis for non-infringement because public evidence supports that the proposed Drug Product is made by a process that goes through a soluble liquid intermediate that could be an injectable drug formulation.

65.     Based on the foregoing public statements contained in Axsome's patent filings, Baudax believes that the proposed Drug Product is manufactured via a process that goes through an intermediary step that creates a formulation/composition that infringes the '727 Patent and the '067 Patent, especially since Axsome's sole basis in the Notice Letter to assert non-infringement is that its proposed Drug Product is in tablet form for oral administration.

-15-

66.     Baudax has only limited information on the proposed Drug Product, in view of the very limited excerpts of NDA No. 215431 produced under the OCA and the limited public statements by Axsome on that product.  However, even that limited information, as detailed above, supports a good faith basis to assert infringement, especially in combination with the act of infringement caused by the filing of Axsome's NDA and because Axsome's sole basis in the Notice Letter to assert non-infringement is that its proposed Drug Product is in tablet form for oral administration.

67.     In view of the limited information available to Baudax, Baudax needs to see the complete regulatory submissions by Axsome to the FDA and other detailed information and data relating to the proposed Drug Product.

68.     That information and data are critical to understanding and assessing the manufacturing process and true composition and formulation of the proposed Drug Product and intermediates thereof.

69.     Axsome did not provide such complete information to Baudax in the documents provided to Baudax's outside counsel under the OCA.

70.     Even if such information had been provided, the OCA by its terms prevented any detailed analysis before this Complaint was filed.  It banned any reference to the information contained in the very limited excerpts from Axsome's NDA in any public Complaint, banned analysis by any expert or consultant without the permission of Axsome, only allowed Baudax's outside counsel to keep the selected disclosed portions of Axsome's NDA for 35 days, and required that the selected disclosed portions of Axsome's NDA not be in the possession of Baudax's outside counsel when this Complaint was filed.

120649365

71.     Under statute, Axsome has committed an act of infringement by filing Axsome's NDA with a Paragraph IV Certification.

72.     Baudax needs discovery to further understand the method of manufacture and composition of the proposed Drug Product.  Baudax also needs the ability to test samples of the proposed Drug Product, including any intermediary compositions.

73.     However, based on the very limited information available to Baudax, and the public information Baudax has in its possession relating to the probable method of manufacture, Baudax has a current good faith basis to assert that the proposed Drug Product will infringe the '727 Patent and the '067 Patent.  This is especially the case because Axsome's only stated basis to assert non-infringement is that its proposed Drug Product is a tablet for oral administration, and as detailed above, that assertion does not support non-infringement.

74.     Baudax anticipates that it will have further evidentiary support for its infringement allegations after a reasonable opportunity for discovery.

75.     In its Detailed Statement, Axsome asserts that it does not infringe on the sole basis of the final proposed Drug Product being in tableted form for oral administration.  That sole basis to assert non-infringement is meritless because, based on Axsome's public patent filings, the proposed Drug Product appears to be manufactured through a process that goes through a soluble liquid intermediate for which there is a good faith basis to believe would infringe at least claims 1 and 5 of the '727 Patent and claim 1 of the '067 Patent, based on a proper construction of those patents and in view of Axsome's reliance solely on the proposed Drug Product's tablet dosage form for oral administration as Axsome's sole basis to assert non-infringement.

120649365

76. Baudax reserves the right to assert infringement claims regarding other patents listed in the Orange Book for Anjeso® and additional claims of the '727 Patent and the '067 Patent after Axsome has provided required disclosures and discovery.

## COUNT I
### (Patent Infringement of the '727 Patent)

77. Baudax repeats and realleges the foregoing paragraphs as if fully set forth herein.

78. Axsome prepared and submitted Axsome's NDA seeking approval to engage in the commercial manufacture, use, sale, offer for sale, and/or distribution throughout the United States of the proposed Drug Product.

79. Axsome's submission of Axsome's NDA with the Paragraph IV Certification is an act of infringement under 35 U.S.C. § 271(e)(2)(A).

80. Baudax has a current good faith belief that the proposed Drug Product is covered by one or more properly construed claims of the '727 Patent, either literally or under the doctrine of equivalents.

81. Upon information and belief, Axsome has made and will continue to make substantial preparation to commercially manufacture, use, sell, offer for sale, and/or distribute throughout the United States and import into the United States the proposed Drug Product before the expiration of the '727 Patent.

82. Unless enjoined by this Court, Axsome intends to, and will, engage in the commercial manufacture, use, sale, offer for sale, and/or distribution throughout the United States and importation into the United States of the proposed Drug Product that is the subject of NDA No. 215431 immediately and imminently upon FDA approval, and will instruct healthcare providers and patients to use said product in accordance with the proposed labeling for said product.

-18-

83.    Upon information and belief and based on the above allegations, when the proposed Drug Product is manufactured, used, sold, offered for sale, and/or distributed in the United States and imported into the United States, Baudax has a current good faith belief that it will directly infringe at least claims 1 and 5 of the '727 Patent under 35 U.S.C. § 271 either literally or under the doctrine of equivalents.

84.    Upon information and belief, Axsome will infringe at least claims 1 and 5 of the '727 Patent either literally or under the doctrine of equivalents under 35 U.S.C. § 271(a) by making, using, offering to sell, selling, and/or distributing in the United States and importing into the United States the proposed Drug Product.

85.    The foregoing actions by Axsome prior to the expiration of the '727 Patent constitute and/or will constitute infringement of at least claims 1 and 5 of the '727 Patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents.

86.    Baudax is entitled to a declaratory judgment that the future commercial manufacture, use, offer for sale, sale, and distribution in the United States, and importation into the United States of the proposed Drug Product will directly infringe the '727 Patent either literally or under the doctrine of equivalents.

87.    Axsome has knowledge of the '727 Patent.

88.    The factual and legal bases contained in the Notice Letter and the Detailed Statement provide no basis to assert invalidity or unenforceability of the '727 Patent.

89.    The commercial manufacture, use, sale, offer for sale, and/or distribution in the United States and importation into the United States of the proposed Drug Product in violation of Baudax's rights in the '727 Patent will cause harm to Baudax for which damages are inadequate.

90.     Unless Axsome is enjoined from infringing the '727 Patent, Baudax will suffer irreparable injury for which there is no adequate remedy at law, and pursuant to 35 U.S.C. § 271(e)(4) and Fed. R. Civ. P. 65, a permanent injunction should be entered preventing further infringement.

91.     Baudax is entitled to relief provided by 35 U.S.C. § 271(e)(4), including an Order of this Court that the effective date of the approval of Axsome's NDA be a date that is not earlier than the expiration date of the '727 Patent, or any later expiration of exclusivity for the '727 Patent to which Baudax may become entitled.

## COUNT II
### (Declaratory Judgment of Patent Infringement of the '727 Patent)

92.     Baudax repeats and realleges the foregoing paragraphs as if fully set forth herein.

93.     Baudax's infringement claims herein also arise under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

94.     Axsome's submission of Axsome's NDA with the Paragraph IV Certification is an act of infringement under 35 U.S.C. § 271(e)(2)(A).

95.     Upon information and belief and based on the above allegations, Baudax has a current good faith belief that the proposed Drug Product is covered by one or more properly construed claims of the '727 Patent, either literally or under the doctrine of equivalents.

96.     Upon information and belief and based on the above allegations, if Axsome's NDA is approved, Axsome's proposed Drug Products will be made, offered for sale, sold, and/or otherwise distributed in the United States, including in Delaware, or will be imported into the United States, including Delaware, by Axsome and/or its affiliates.  Baudax has a current good faith belief that Axsome will directly infringe one or more claims of the '727 Patent, including

-20-

without limitation claims 1 and 5, either literally or under the doctrine of equivalents.  *See* 35 U.S.C. § 271(a).

97.    Upon information and belief, Axsome's infringing activities, including the commercial manufacture, use, offer for sale, sale, and/or importation of Axsome's proposed Drug Product, will begin immediately after the FDA approves Axsome's NDA.  Any such conduct before the expiration of the '727 Patent will directly infringe one or more claims of the '727 Patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents.

98.    As a result of the foregoing, there is a real, substantial, and continuing justiciable controversy between Baudax and Axsome concerning liability for the infringement of the '727 Patent for which this Court may grant declaratory relief consistent with Article III of the United States Constitution.

99.    Baudax will be substantially and irreparably harmed by Axsome's infringing activities unless those activities are enjoined by this Court.  Baudax has no adequate remedy at law.

## COUNT III
### (Patent Infringement of the '067 Patent)

100.    Baudax repeats and realleges the foregoing paragraphs as if fully set forth herein.

101.    Axsome prepared and submitted Axsome's NDA seeking approval to engage in the commercial manufacture, use, sale, offer for sale, and/or distribution throughout the United States of the proposed Drug Product.

102.    Axsome's submission of Axsome's NDA with the Paragraph IV Certification is an act of infringement under 35 U.S.C. § 271(e)(2)(A).

120649365

103. Baudax has a current good faith belief that the proposed Drug Product is covered by one or more properly construed claims of the '067 Patent, either literally or under the doctrine of equivalents.

104. Upon information and belief, Axsome has made and will continue to make substantial preparation to commercially manufacture, use, sell, offer for sale, and/or distribute throughout the United States and import into the United States the proposed Drug Product before the expiration of the '067 Patent.

105. Unless enjoined by this Court, Axsome intends to, and will, engage in the commercial manufacture, use, sale, offer for sale, and/or distribution throughout the United States and importation into the United States of the proposed Drug Product that is the subject of NDA No. 215431 immediately and imminently upon FDA approval, and will instruct healthcare providers and patients to use said product in accordance with the proposed labeling for said product.

106. Upon information and belief and based on the above allegations, when the proposed Drug Product is manufactured, used, sold, offered for sale, and/or distributed in the United States and imported into the United States, Baudax has a current good faith belief that it will directly infringe at least claim 1 of the '067 Patent under 35 U.S.C. § 271 either literally or under the doctrine of equivalents.

107. Upon information and belief, Axsome will infringe at least claim 1 of the '067 Patent either literally or under the doctrine of equivalents under 35 U.S.C. § 271(a) by making, using, offering to sell, selling, and/or distributing in the United States and importing into the United States the proposed Drug Product.

108.     The foregoing actions by Axsome prior to the expiration of the '067 Patent constitute and/or will constitute infringement of at least claim 1 of the '067 Patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents.

109.     Baudax is entitled to a declaratory judgment that the future commercial manufacture, use, offer for sale, sale, and/or distribution in the United States, and importation into the United States of the proposed Drug Product will directly infringe the '067 Patent either literally or under the doctrine of equivalents.

110.     Axsome has knowledge of the '067 Patent.

111.     The factual and legal bases contained in the Notice Letter and the Detailed Statement provide no basis to assert invalidity or unenforceability of the '067 Patent.

112.     The commercial manufacture, use, sale, offer for sale, and/or distribution in the United States and importation into the United States of the proposed Drug Product in violation of Baudax's rights in the '067 Patent will cause harm to Baudax for which damages are inadequate.

113.     Unless Axsome is enjoined from infringing the '067 Patent, Baudax will suffer irreparable injury for which there is no adequate remedy at law, and pursuant to 35 U.S.C. § 271(e)(4) and Fed. R. Civ. P. 65, a permanent injunction should be entered preventing further infringement.

114.     Baudax is entitled to relief provided by 35 U.S.C. § 271(e)(4), including an Order of this Court that the effective date of the approval of Axsome's NDA be a date that is not earlier than the expiration date of the '067 Patent, or any later expiration of exclusivity for the '067 Patent to which Baudax may become entitled.

## COUNT IV
### (Declaratory Judgment of Patent Infringement of the '067 Patent)

115.     Baudax repeats and realleges the foregoing paragraphs as if fully set forth herein.

-23-

116.     Baudax's infringement claims herein also arise under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

117.     Axsome's submission of Axsome's NDA with the Paragraph IV Certification is an act of infringement under 35 U.S.C. § 271(e)(2)(A).

118.     Upon information and belief and based on the above allegations, Baudax has a current good faith belief that the proposed Drug Product is covered by one or more properly construed claims of the '067 Patent, either literally or under the doctrine of equivalents.

119.     Upon information and belief and based on the above allegations, if Axsome's NDA is approved, Axsome's proposed Drug Products will be made, offered for sale, sold, and/or otherwise distributed in the United States, including in Delaware, or will be imported into the United States, including Delaware, by Axsome and/or its affiliates.  Baudax has a current good faith belief that Axsome will directly infringe one or more claims of the '067 Patent, including without limitation claim 1, either literally or under the doctrine of equivalents.  *See* 35 U.S.C. § 271(a).

120.     Upon information and belief, Axsome's infringing activities, including the commercial manufacture, use, offer for sale, sale, and/or importation of Axsome's proposed Drug Product, will begin immediately after the FDA approves Axsome's NDA.  Any such conduct before the expiration of the '067 Patent will directly infringe, contribute to the infringement of, or induce the infringement of one or more claims of the '067 Patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents.

121.     As a result of the foregoing, there is a real, substantial, and continuing justiciable controversy between Baudax and Axsome concerning liability for the infringement of the '067

-24-

Patent for which this Court may grant declaratory relief consistent with Article III of the United States Constitution.

122. Baudax will be substantially and irreparably harmed by Axsome's infringing activities unless those activities are enjoined by this Court. Baudax has no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for judgment as follows:

A. Axsome has directly infringed one or more claims of the '727 Patent and the '067 Patent, either literally or under the doctrine of equivalents;

B. A declaration under 28 U.S.C. § 2201 that, if Axsome, its officers, directors, agents, servants, employees, representatives, attorneys, parents, subsidiaries, affiliates, other related business entities, or other persons acting or attempting to act in concert, participation, or in privity with Axsome, or acting on Axsome's behalf, engage in the commercial manufacture, use, offer for sale, or sale in the United States, or importation into the United States, of Axsome's proposed Drug Product, then it will constitute an act of direct infringement of the '727 Patent and the '067 Patent, either literally or under the doctrine of equivalents;

C. That, pursuant to 35 U.S.C. § 271(e)(4)(A), the effective date of any approval of Axsome's NDA shall not be a date that is earlier than the latest expiration date of the '727 Patent and the '067 Patent, including any applicable exclusivities or extensions;

D. That Axsome's officers, agents, servants, and employees, and those persons acting in concert, participation, or in privity with any of them, and their successors or assigns, be permanently enjoined from commercially manufacturing, using, offering for sale, selling, or importing into the United States the proposed Drug Product and any other product that infringes

-25-

or induces or contributes to the infringement of one or more claims of the '727 Patent and the '067 Patent prior to their expiration, including any exclusivities or extensions to which Plaintiff is or becomes entitled; and

E.     That Plaintiff be awarded such other and further relief as this Court deems just and proper, including all available monetary remedies and exceptional case remedies under 35 U.S.C. § 285 if deemed applicable.

Of Counsel:                                        Respectfully submitted,


Andrew P. Zappia (*pro hac vice* to be filed)     */s/ James H. S. Levine*
TROUTMAN PEPPER                                   James H. S. Levine (DE Bar No. 5355)
  HAMILTON SANDERS LLP              TROUTMAN PEPPER
70 Linden Oaks, Suite 210                           HAMILTON SANDERS LLP
Rochester, NY 14625                               Hercules Plaza, 1313 Market Street, Suite 5100
Tel: 585-270-2102                                 Wilmington, DE 19801
Email: andrew.zappia@troutman.com                 Tel: 302-777-6536
                                                  Email: james.levine@troutman.com


Dated: November 9, 2021                           *Attorneys for Plaintiff*

120649365